**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERVIN L. HANDON<br>128 S 4TH Street, Apt. 5<br>Reading, PA 19602 | : <br> : <br> : <br> : | |
| | | CIVIL ACTION |
| Plaintiff, | : <br> : | |
| v. | : | CASE NO.: |
| | : | |
| S&S ACTIVEWEAR, LLC<br>220 Remington Blvd, 3rd Flr.<br>Bolingbrook, IL 60440<br>    and<br>S&S ACTIVEWEAR HOLDINGS, LLC<br>220 Remington Blvd, 3rd Flr.<br>Bolingbrook, IL 60440 | : <br> : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : | |

## <u>CIVIL ACTION COMPLAINT</u>

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

### <u>INTRODUCTION</u>

1.      This action has been initiated by Ervin L. Handon (hereinafter referred to as "Plaintiff," unless indicated otherwise) against S&S Activewear, LLC and S&S Activewear Holdings, LLC (herein collectively referred to as "Defendant," and individually as "Defendant SSA" and "Defendant SSH"). Plaintiff asserts violations of Title VII of the Civil Rights Act ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981), the Americans with Disabilities Act, as Amended ("ADA"), and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff contends he was subject to

---

[1] Plaintiff will seek leave to amend the instant lawsuit to add claims under the PHRA once properly administratively exhausted. Plaintiff was however required to initiate this lawsuit pursuant to a right-to-sue letter prior to such PHRA exhaustion. Plaintiff's PHRA claims will mirror identically her ADA claims, and they are analyzed identically in the Third Circuit as well.

discriminatory and retaliatory mistreatment while employed with Defendants (as explained *infra*) and that he was unlawfully terminated from his employment.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. Plaintiff's state claims will be proper under this Court's ancillary or supplemental jurisdiction as they arise out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because the actions underlying this case occurred in this District, and Defendant is deemed to reside where it is subject to personal jurisdiction (rendering venue appropriate for multiple reasons).

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult male residing at the above-captioned address.

7.     Defendant SSH is a large wholesale apparel company headquartered at the above-captioned address, with multiple warehouses throughout the United States.

8.     Upon information and belief, Defendant SSA is a subsidiary of Defendant SSH.

9.     Upon further information and belief, because of their interrelation of operations, common ownership or management, and other factors, Defendant SSH and Defendant SSA are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single, joint and/or integrated employer for purposes of the instant action.

10.    At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

11.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.    Plaintiff is a Black/African American male.

13.    Plaintiff was employed by Defendant for approximately 2 months (commencing on or about May 29, 2025) until his termination on or about July 25, 2025.

14.    Plaintiff physically worked for Defendant at its location at 2 Ontelaunee Drive, Reading, PA 19605.

15.    Plaintiff was hired as a Machine Operator/Cherry Picker and held this position until his termination on July 25, 2025.

16.    Plaintiff's duties as Machine Operator/Cherry Picker included but were not limited to:

    i.   Operating a machine known as a High Lift Forklift or Cherry Picker, which could lift a person as high as 25 feet to retrieve packages from high shelves;

    ii.   Retrieving packages from high shelves using the Cherry Picker and bringing them to the Retrieving Line;

    iii.   Stocking shelves; and

    iv.   Machine maintenance, although he ceased performing maintenance duties in the middle of the second month after his hiring date.

17. In his role as Machine Operator, Plaintiff was directly supervised by, and reported to Plant Manager, R.J. Gilgore ("Gilgore" – Caucasian), and the onsite Shift Manager, which rotated daily.

18. The Safety Specialist during Plaintiff's employment with Defendant, whose responsibility included coordinating employee medical leave, was Randy Remaly ("Remaly" – Caucasian).

19. The Human Resources Generalist relevant to the instant matter was Raymond Branch ("Branch" – Caucasian).

### Racial Discrimination & Hostile Work Environment

20. Throughout his employment with Defendant, Plaintiff was a hard-working employee who performed his job well.

21. However, despite his hard work and dedication to the job, Defendant's management and staff subjected Plaintiff to race-based discrimination culminating in a hostile work environment.

22. For example, Plaintiff observed that many of his coworkers used racial slurs during work hours, including but not limited to the word "nigger."

4

23.     Racial slurs were often used in front of members of management including Remaly, Nina (last name unknown, "Nina"– Hispanic), and Ceasar Roma ("Roma" – Hispanic), but Defendant's management did not say anything to stop this racist behavior, thereby effectively condoning it.

24.     In addition to the foregoing racial slurs (which were permitted by Defendant), Defendant's management treated Black/African American employees disparately and discriminatorily.

25.     Black employees were often belittled, treated in a rude and demeaning manner, and assigned to perform menial tasks, such as folding boxes, on a much more consistent basis than Caucasian and/or other non-Black employees.

26.     For example, on July 14, 2026, Plaintiff was assigned to fold boxes (which was one of the many times he was given this menial task).

27.     When Plaintiff arrived to perform the task of folding boxes, other Hispanic employees were assisting with this task but then stopped.

28.     Some of the aforesaid Hispanic employees went home (even though the shift was not over) and others sat down and stopped folding boxes.

29.     While folding boxes with other Black employees on this date, they began to discuss amongst themselves how the aforesaid Hispanic employees stopped working when they arrived, and that Black employees were constantly assigned these aforesaid menial tasks as compared to non-Black employees, who were not given menial work very often.

30.     During this conversation, the Team Lead for Decant Positions, Kelly Keely ("Keely" – Caucasian) yelled at Plaintiff and the group of Black employees in a rude and hostile manner, suggesting that they should leave if they did not want to fold boxes.

31.     Plaintiff had never seen or heard Keely or any other supervisor speak to Caucasian and/or non-Black employees in such a rude and hostile manner.

32.     The next day, Plaintiff complained about Keely's aforesaid discriminatory behavior to Gilgore and Branch.

33.     Branch arranged a meeting between Plaintiff, Gilgore, and Keely to discuss the aforesaid incident on or about July 15, 2025, at which Plaintiff explained:

      i.   That he felt Keely's aforesaid misconduct was motivated by his race, and that he felt offended, harassed, and belittled by the same;

      ii.   That Caucasian and/or non-Black employees were not treated in this manner; and

      iii.   That he wanted his complaint to be documented.

34.     Upon information and belief, Defendant never investigated Plaintiff's complaints of racial discrimination. In fact, after this meeting, Keely became very hostile to Plaintiff, including ignoring him, refusing to speak to him, and was noticeably displeased every time Plaintiff had to drop off a package to her on the receiving line where she worked.

### Plaintiff's Disabilities and Need/Requests for Reasonable Accommodations

35.     Per Defendant's policy, a full day of absence incurred 1 point, a tardy arrival or early leave of more than 2 hours incurred 1 point, and a tardy arrival or early leave of less than 2 hours incurred one half (0.5) points.

36.     On or about Wednesday, July 2, 2025, while working for Defendant, Plaintiff suffered a work-related injury to his back and had to leave work early to seek medical attention for the same.

37.    Plaintiff reported the injury to Remaly, and Remaly expressly allowed Plaintiff to leave work early to seek treatment.

38.    Remaly provided Plaintiff with the name and address of Defendant's designated medical provider for workplace injuries.

39.    Plaintiff mistakenly traveled to the wrong address while attempting to seek treatment on July 2, 2025, and due to the bus schedule, could not attempt to travel to Defendant's medical provider again until the next day, July 3, 2025.

40.    On July 3, 2025, Plaintiff visited Defendant's medical provider, who indicated that the injury was a back strain and cleared Plaintiff to return to work with no restrictions.

41.    A Workers' Compensation ("WC") claim was filed for Plaintiff through Gallagher Bassett Services, Inc. ("Gallagher Bassett"), which registered the injury as occurring on July 3, 2025, the day of Plaintiff's medical visit. Gallagher Bassett later sent Plaintiff a confirmation letter that his WC claim was received and pending on July 11, 2025.

42.    When Plaintiff returned to work for his next scheduled shift on or about July 7, 2025, Gilgore issued Plaintiff one (1) full attendance point for leaving work early on or about July 2, 2025, to seek medical treatment for his work-related injury/health condition.

43.    On or about July 21, 2025, Plaintiff began to feel dizzy and sweat profusely while at work.

44.    Plaintiff tried to work as long as possible, but when his dizziness became unbearable, he asked Remaly for permission to leave work early.

45.    Remaly permitted Plaintiff to leave early and go home.

46.    Despite obtaining Remaly's express permission to leave work early due to his health, Plaintiff was penalized and given 1 full point.

47.    Plaintiff returned to work on or about July 22, 2025, and began to feel so severely dizzy and sweat so profusely that he believed he was having a stroke or heart attack and asked Remaly to call 911.

48.    Plaintiff had a heart attack several years prior and believed that he was experiencing similar symptoms.

49.    When the ambulance arrived, the first responders confirmed that Plaintiff was having a stroke because of reduced blood and oxygen flow in his brain.

50.    Plaintiff was transported to Reading Hospital for treatment, where he was hospitalized for about eight (8) hours.

51.    Plaintiff also experienced chest pains and atrial fibrillation while hospitalized.

52.    While in the hospital on or about July 22, 2025, Plaintiff communicated with Remaly to update him on the status of his condition and the results of his medical examination.

53.    The next day, on or about July 23, 2025, Plaintiff called Remaly to ask for reasonable accommodation in the form of a few days off from work to recover from the aforementioned stroke, chest pains, and atrial fibrillation.

**<u>Retaliation and Failure to Accommodate</u>**

54.    Defendant failed to engage in the interactive process and/or accommodate Plaintiff's aforesaid request.

55.    Rather, in response to Plaintiff's request to take a few days off to care for and treat for his medical conditions, Remaly told Plaintiff that he was only allowed to take (1) day off to recover because he already had 2.5 points and would be terminated if he took more than one absence.

8

56.    During Plaintiff's aforesaid conversation with Remaly, Remaly did not inform him that Defendant had already counted his early leave for hospitalization on July 21, 2025 against him and had assessed him one (1) full attendance point for a total of 3.5 points (as of July 23, 2025), not 2.5.

57.    Based on Remaly's representation, Plaintiff only took off on July 23, 2025, to recover, believing that he would return with a total of 3.5 points.

58.    To avoid discipline and/or job loss, Plaintiff returned to work the next day on or about July 24, 2025, despite having suffered a stroke just two days earlier.

59.    Plaintiff hand delivered his medical examination results to Remaly on July 24, 2025, when he physically returned to work.

60.    On or about July 25, 2025, as soon as Plaintiff arrived at work, Remaly called Plaintiff into his office with Branch and terminated him for accumulating over four (4) attendance points (a total of 4.5).

61.    Defendant counted Plaintiff's ADA-qualifying absences against him in making the decision to terminate his employment and thus failed to accommodate his disabilities.

62.    Defendant's reason for terminating Plaintiff is completely pretextual, discriminatory, and retaliatory because:

  i.    Defendant did not engage in the interactive process;

  ii.   Defendant counted ADA-qualifying absences or early leaves against Plaintiff in making the decision to terminate him;

  iii.  Setting aside the fact that his early leave from work on July 21, 2025 and his absence on July 23, 2025 were clearly ADA-qualifying absences and should not have been counted against him in making the decision to

terminate his employment, Defendant also intentionally misrepresented the number of points that Plaintiff had accrued as of July 23, 2025 and therefore misled Plaintiff into believing that he could be absent on July 23, 2025 to care for his disabilities without facing termination;

iv.  Plaintiff would have forced himself to return to work on July 23, 2025, had Defendant not misrepresented the number of attendance points he had accrued;

v.  Defendant terminated Plaintiff in close temporal proximity to being hospitalized for his disabilities and/or his requests for reasonable ADA accommodations;

vi.  Defendant terminated Plaintiff in close temporal proximity to Plaintiff's complaints of racial discrimination;

vii.  Defendant terminated Plaintiff shortly after seeking workers' compensation benefits;

viii.  Defendant assessed points against Plaintiff that they had previously informed Plaintiff would not be counted against him (including but not limited to June 23, 2025); and

ix.  Defendant assessed points against Plaintiff for early leaves, wherein he was given express permission to leave early for medical reasons.

63.    Therefore, Plaintiff believes that Defendant terminated him unlawfully in violation of Title VII, 42 U.S.C. Section 1981 and the ADA.

**Count I**
**Violations of Title VII**
**([1] Racial Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

64.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

65.     Plaintiff believes and avers that he was subjected to a hostile work environment because of his race and/or objections to racial discrimination through discriminatory/derogatory comments, discriminatory harassment, pretextual admonishment, and disparate treatment.

66.     Plaintiff also believes and avers that his race was a motivating and/or determinative factor in Defendant's decisions to subject him to disciplinary action and terminate his employment.

67.     Plaintiff also believes and avers that Defendant terminated him in retaliation for objecting to and/or complaining of racial discrimination.

68.     The adverse actions taken against Plaintiff as outlined herein because of his race and/or in retaliation for his objections to racial discrimination/retaliation constitute violations of Title VII.

**Count II**
**Violations of Title VII of 42 U.S.C. Section 1981**
**([1] Racial Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

69.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

70.     Plaintiff believes and avers that he was subjected to a hostile work environment because of his race and/or objections to racial discrimination through discriminatory/derogatory comments, discriminatory harassment, pretextual admonishment, and disparate treatment.

11

71. Plaintiff also believes and avers that he was subjected to disciplinary action and ultimately terminated because of his race.

72. Plaintiff further believes and avers that he was terminated in retaliation for complaining of racial discrimination.

73. The adverse actions taken against Plaintiff as outlined herein because of his race and/or in retaliation for his complaints of discrimination constitute violations of Section 1981.

## Count III
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;
[3] Failure to Accommodate)

74. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

75. Plaintiff believes and avers that his actual, perceived and/or record of disabilities were a motivating and/or determinative factor in Defendant's decisions to subject him to disciplinary action and terminate his employment.

76. Plaintiff also believes and therefore avers that Defendant subjected him to disciplinary action and terminated his employment in retaliation for engaging in protected activity under the ADA.

77. Lastly, Plaintiff believes and avers that he was terminated as a direct result of Defendant's failure to engage in the interactive process and/or accommodate his disabilities.

78. These aforesaid actions constitute violations of the ADA.

## Count VI
### Violations of Pennsylvania Common Law
(Workers' Compensation Retaliation)

79. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12

80.    Plaintiff engaged in protected activity, namely sustaining a workplace injury, seeking medical attention for said injury, and pursuing a workers' compensation claim.

81.    Defendant then terminated Plaintiff in extremely suggestive temporal proximity and under demonstrably pretextual circumstances because he engaged in the aforementioned protected activity.

82.    These actions as aforesaid constitute violations of Pennsylvania common law. *See e.g., Shick v. Shirley*, 552 Pa. 590, 716 A.2d 1231, 1233 (Pa. 1998).

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B.    Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.    Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: June 25, 2026

14

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Ervin L. Handon | : | CIVIL ACTION |
| v. | : | |
| S&S Activewear, LLC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.       (x )

| 6/25/2026 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** ***Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify):*_____

**B.** ***Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
HANDON, ERVIN L.

### DEFENDANTS
S&S ACTIVEWEAR, LLC, ET AL.

**(b)** County of Residence of First Listed Plaintiff    Berks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Will
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |    Liability   ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel &     Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| |    Slander     Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'     Product Liability | | ☐ 835 Patent – Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) |    Liability   ☐ 368 Asbestos Personal | |     New Drug Application | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 340 Marine     Injury Product | | ☐ 840 Trademark | |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product     Liability | | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| |    Liability   **PERSONAL PROPERTY** | **LABOR** | | |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability |    Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 360 Other Personal     Property Damage | | ☐ 862 Black Lung (923) | |
| |    Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | ☐ 362 Personal Injury -     Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| |    Medical Malpractice | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate     Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/     Accommodations   ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities -     Employment   ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities -     Other   **Other:** | ☐ 462 Naturalization Application | | |
| |   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education   ☐ 550 Civil Rights | | | |
| |   ☐ 555 Prison Condition | | | |
| |   ☐ 560 Civil Detainee -     Conditions of     Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| | | | | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of the ADA, Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE   6/25/2026     SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____